# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-308V
(Filed: January 21, 2019)

* * * * * * * * * * * * * *
| | |
|---|---|
| EMILIE WOLF, *as personal representative of the Estate of* MATTHEW WOLF, | * UNPUBLISHED * * * |
| Petitioner, | * Decision on Interim Attorneys' Fees and * Costs |
| v. | * * |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * * * |
| Respondent. | * |

* * * * * * * * * * * * * *

*Ronald C. Homer, Esq.*, Conway, Homer, PC. Boston, MA, for petitioner.
*Sarah C. Duncan, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

**DECISION ON INTERIM ATTORNEYS' FEES AND COSTS**[1]

**Roth**, Special Master:

On March 6, 2017, Emilie Wolf ("Ms. Wolf" or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program on behalf of the estate of her son, Matthew Wolf ("Mr. Wolf").[2] Petitioner alleges that Mr. Wolf suffered from transverse myelitis ("TM") as a result of the tetanus-diphtheria-acellular-pertussis ("Tdap") vaccination he received on March 17, 2014. Petition, ECF No. 1.

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

On November 13, 2019, petitioner filed a Motion for Interim Attorneys' Fees and Costs ("Motion for Interim Fees"), requesting $30,094.10 in attorneys' fees and $43,057.28 in attorneys' costs for a total of $73,151.38. ECF No. 47. On November 25, 2019, respondent filed a response to petitioner's Motion for Interim Fees that contained no specific objection to the amount requested or hours billed, but instead asked that I exercise my discretion in determining the proper amount to be awarded. ECF No. 48. Petitioner did not file a reply to respondent's response.

## I. Procedural History

Petitioner filed her petition on March 6, 2017. Petition, ECF No. 1. This matter was assigned to me on March 7, 2017. *See* ECF No. 4. On March 30, 2017, petitioner filed an amended petition, several medical records, and an affidavit. Amended Petition, ECF No. 7; Petitioner's Exhibits ("Pet. Ex.") 1-8, ECF No. 8. She filed additional records on April 3 and 14, 2017. Pet. Ex. 10-12, ECF Nos. 10-11.

An initial status conference was held in this matter on May 11, 2017, after which respondent was ordered to file a status report identifying any outstanding records and indicating how he intended to proceed by August 9, 2017. Order, ECF No. 13. Petitioner filed an additional affidavit on May 26, 2017. Pet. Ex. 13, ECF No. 14.

On August 30, 2017, respondent filed a status report advising that he intended to continue to defend this claim and intend to file a Rule 4(c) Report. Respondent's Status Report ("Resp. S.R."), ECF No. 17. Respondent filed his Rule 4(c) Report on October 16, 2017 arguing that petitioner had failed to meet her burden in this case and thus, is not entitled to compensation. Resp. Report, ECF No. 18. A 240 Order was issued on October 23, 2017.

Petitioner filed an expert report from Dr. Carlos Tornatore, a neurologist, on January 12, 2018, and supporting medical literature on January 18, 2018. Pet. Ex. 14-35, ECF Nos. 20, 22-24. Respondent filed an expert report from Dr. Subramanian Sriram and supporting medical literature on March 14, 2018. Resp. Ex. A-B, ECF No. 26. Petitioner filed a supplemental expert report from Dr. Tornatore on July 13, 2018. Pet. Ex. 36, ECF No. 30. Respondent filed a responsive expert report from Dr. Sriram and additional medical literature on October 25, 2018. Resp. Ex. C-C3, ECF No. 33. On December 21, 2018,[3] petitioner filed a status report advising that she did not intend to file a supplemental expert report at that time but reserved her right to do so at a later date. Pet. S.R., ECF No. 34.

A Rule 5 status conference was held on March 12, 2019, during which I advised petitioner that her expert had not adequately addressed *Althen* prong I and suggested she obtain a report from an immunologist who could discuss the mechanism by which a Tdap vaccine can cause TM. Order, ECF No. 35. Petitioner was ordered to file a status report advising whether she intended to obtain an immunologist to author an expert report by April 11, 2019. *Id.*

On April 11, 2019, petitioner filed a status report advising that she intended to file a report from an immunologist and requested 60 days to do so. Pet. S.R., ECF No. 36. After three

---

[3] A lapse in the Department of Justice's appropriations took place between December 22, 2018 and January 28, 2019. During this time, the Court was unable to contact either party as to avoid ex parte communication.

2

extensions of time, petitioner filed an expert report from an immunologist, Dr. Omid Akbari, and accompanying medical literature on October 22, 2019. Pet. Ex. 37-81, ECF Nos. 40-45. Respondent currently has a pending deadline to file a responsive expert report by March 23, 2020. Non-PDF Order, dated January 17, 2020.

Petitioner filed the instant Motion for Interim Fees on November 13, 2019, requesting $30,094.10 in attorneys' fees and $43,057.28 in attorneys' costs for a total of $73,151.38. ECF No. 47. On November 25, 2019, respondent filed a response to petitioner's Motion for Interim Fees that contained no specific objection to the amount requested or hours billed, but instead asked that I exercise my discretion in determining the proper amount to be awarded. ECF No. 48. Petitioner did not file a reply to respondent's response.

This matter is now ripe for determination.

## II. Legal Framework

The Vaccine Act permits an award of reasonable attorneys' fees and other costs. § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, petitioner's counsel is automatically entitled to reasonable attorneys' fees. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1). Moreover, special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim." *Shaw v. Sec'y of Health & Humans Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010); *see Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). One instance in which interim fees have been awarded is "where proceedings are protracted." *Avera*, 515 F.3d at 1352.

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera*, 515 F.3d at 1349. Under this approach, [t]he initial estimate of reasonable attorneys' fees is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id*.

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

## III. Discussion

### A.   Availability of Interim Fees

Special masters have discretion to award interim fees while the litigation is ongoing if "the cost of litigation has imposed an undue hardship" and there is "a good faith basis for the claim."

3

*Shaw v. Sec'y of Health & Human Servs.*, 609 F. 3d 1372, 1375 (Fed. Cir. 2010); *see Avera*, 515 F. 3d at 1352. The court in *Avera* held that interim fees may be awarded "in appropriate circumstances." 515 F.3d at 1351. The court then listed some circumstances—cases involving "protracted" proceedings and "costly experts"—in which it would be particularly appropriate to award interim fees. *Id.* at 1352. But "the Federal Circuit in *Avera* . . . did not enunciate the universe of litigation circumstances which would warrant an award of interim attorney's fees," *Woods*, 105 Fed. Cl. at 154, and "special masters [retain] broad discretion in determining whether to award" them, *Al-Uffi ex rel. R.B. v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *5 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). The inquiry is simply whether there is "a good faith basis for the claim" and the denial of interim fees would "impose[] an undue hardship" in the circumstances of the case. *Shaw*, 609 F.3d at 1375. In making this determination, "the special master may consider any of the unique facts of a case." *Rehn v. Sec'y of Health & Human Servs.*, 126 Fed. Cl. 86, 94 (2016).

Under the circumstances of this case, interim fees are warranted. This case has been pending for almost three years, which ordinarily "suffice[s] to constitute the type of 'circumstances' to warrant an interim fee award." *Woods*, 105 Fed. Cl. at 154; *see also, e.g.*, *Thompson v. Sec'y of Health & Human Servs.*, No. 12-475V, 2018 WL 1559799, at *1 (Fed. Cl. Spec. Mstr. Feb. 28, 2018) ("[I]nterim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship in petitioner"); *Kottenstette v. Sec'y of Health & Human Servs.*, No. 15-1016V, 2017 WL 5662780, at *3 (Fed. Cl. Spec. Mstr. Oct. 30, 2017) (finding two-year proceeding constituted appropriate circumstances for interim fees). Respondent does not dispute that there is "a good faith basis for [petitioner's] claim." *Shaw*, 609 F.3d at 1375; *see Sharp-Rountree*, 2015 WL 12600336, at *3 (explaining that "petitioners are entitled to a presumption of good faith absent direct evidence of bad faith" and finding a good faith basis when respondent "declined to challenge [it]"). Further, petitioner has expended significant funds on expert reports, and it appears an entitlement hearing will likely be necessary. Given the unprecedented number of cases currently pending in the Vaccine Program, if this matter requires a hearing, it will likely not be scheduled for at least two years. In sum, the circumstances of this case warrant an award of interim fees and costs, so as not to impose economic hardship on petitioner.

B.   **Reasonable Hourly Rates**

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). This rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a limited exception that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (Fed. Cir. 2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for

attorneys' fees based upon the attorneys' experience. *See McCulloch* v. *Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has issued a fee schedule that updates the *McCulloch* rates to account for inflation in subsequent years.[4]

Petitioner requested $30,094.10 in attorneys' fees. Motion for Interim Fees at 1. She requested the following hourly rates for her attorney and the other attorneys, paralegal, and law clerks at her counsel's firm: for Joseph Pepper, $290 for work performed in 2016, $297 for work in 2017, $305 for work in 2018, and $325 for work performed in 2019; for Ronald Homer, $409 for work performed in 2017, $421 for work performed in 2018, and $430 for work in 2019; for Christina Ciampolillo, $300 for work performed in 2016, $307 for work in 2017, $342 for work in 2018, and $ 350 for work in 2019; for Meredith Daniels, $294 for work performed in 2018, and $320 for work in 2019; for paralegals at the Homer firm, $135 for work in 2016, $138 for work performed in 2017, $142 for work in 2018, and $145 for work in 2019; and for law clerks, $145 for work in 2016, and $148 for work performed in 2019. *See* Motion for Interim Fees, Ex. A at 35-36. The requested hourly rates are consistent with the rates previously found to be reasonable in cases involving petitioner's counsel and his law firm. *See e.g.*, *Powers v. Sec'y of Health & Human Servs.*, No. 14-917, 2019 WL 423065, at *5 (Fed. Cl. Spec. Mstr. Jan. 10, 2019); *Faup v. Sec'y of Health & Human Servs.*, No. 15-42V, 2018 WL 343317, at *2 (Fed. Cl. Spec. Mstr. May 30, 2018); *Stepp v. Sec'y of Health & Human Servs.*, No. 14-851V, 2018 WL 793426, at *2 (Fed. Cl. Spec. Mstr. Jan. 2, 2018). Therefore, the hourly rates requested in this case do not warrant a reduction.

    **C.**    **Hours Reasonably Expended**

Once the applicable hourly rate is determined, it is applied to the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. The application for fees and costs must "sufficiently detail and explain the time billed so that a special master may determine . . . whether the amount requested is reasonable," and an award of attorneys' fees may be reduced for "vagueness" in billing. *J.W. ex rel. Wilson* v. *Sec'y of Health & Human Servs.*, No. 15-1551V, 2017 WL 877278, at *4 (Fed. Cl. Spec. Mstr. Feb. 10, 2017). Moreover, counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton* v. *Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo* v. *Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016).

Furthermore, some tasks are generally compensated at a reduced rate. Attorneys who perform non-attorney-level work are compensated at a rate comparable to what would be paid to a paralegal. *See O'Neill* v. *Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott* v. *Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). Finally, some tasks

---

[4] This fee schedule is posted on the court's website. *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2018*, http://www.uscfc.uscourts.gov/node/2914.

are never compensable. For instance, "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews* v. *Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Additionally, clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Non-compensable clerical and secretarial tasks include making travel arrangements, reviewing and paying invoices, setting up meetings, organizing files, scheduling conference calls, and reviewing files for consistency. *J.W.*, 2017 WL 877278, at *3; *Barry v. Sec'y of Health & Human Servs.*, No. 12-039V, 2016 WL 6835542, at *4 (Fed. Cl. Spec. Mstr. Oct. 25, 2016).

It is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen* v. *Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming special master's reduction of attorney and paralegal hours); *Guy* v. *Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same). Ultimately, special masters have substantial discretion in awarding fees and costs, and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella* v. *Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen*, 102 Fed. Cl. at 729.

Upon review of the hours billed by petitioner's counsel and his firm, the majority of hours billed appear to be reasonable. *See generally*, Motion for Interim Fees, Ex. A. However, there were multiple instances[5] of block billing,[6] which is disfavored by the Program, as it frustrates the Court's ability to evaluate the reasonableness of the time billed. *See Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *23-24 (Fed. Cl. Spec. Mstr. June 15, 2009). However, because there are limited instances of block billing throughout petitioner's counsel's billing records, a reduction is not currently warranted. Petitioner's counsel is hereby warned that if he further engages in block billing in this matter or any other matters before me, his attorneys' fees award amount will be reduced. Accordingly, petitioner is awarded **$30,092.10** in attorneys' fees.

D.   **Reasonable Costs**

Petitioner requested a total of $43,057.28 in attorneys' costs. Motion for Interim Fees at 2. The requested costs are those associated with securing medical records and expert reports. *See id.*, Ex. B. Petitioner's counsel has provided sufficient documentation to support his costs requests for

---

[5] The following entries are examples and are not exhaustive; they merely provide a sampling.

[6] *See, e.g.*, Motion for Interim Fees, Ex. A at 6 (6 hours billed for "[B]egan initial record summary. [R]eview case notes. [I]ntake memo, narrative, etc. Summarize medical records/exhibits 1-2; transmit pertinent medical appointments and testing in chronological med record summary; take notes to confirm f/u visits and testing is included as ordered; not any potentially missing records."); *id.* at 7 (5.50 hours billed for "[C]ontinued record summary; Summarize medical records/exhibit 5; transmit pertinent medical appointments and testing in chronological med record summary; take notes to confirm f/u visits and testing is included as ordered; not any potentially missing records.").

6

all but $65.25 for costs associated with postage, photocopies, and flash drives. *See id.*, Ex. A at 34. Costs cannot be reimbursed without proper documentation. Therefore, considering the in-depth analysis provided by petitioner's experts and reasonableness of the costs associated with obtaining medical records, the only reduction to petitioner's costs request will be for inadequate documentation in the amount of $65.25.[7] Accordingly, petitioner is awarded **$42,992.03** in costs.

### V. Total Award Summary

Based on the foregoing, petitioner's Motion for Interim Attorneys' Fees and Costs is **GRANTED IN PART**. Accordingly, I award **$73,084.13**,[8] representing $30,092.10 in attorneys' fees and $42,992.03 in attorneys' costs in the form of a check payable jointly to **petitioner and petitioner's counsel, Ronald Homer, Esq.** The Clerk shall enter judgment accordingly.[9]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special master

---

[7] As this is an interim fees and costs motion, petitioner may request reimbursement for these costs, supported by proper documentation, in her final fees and costs motion.

[8] This amount is intended to cover all legal expenses incurred up to the date of filing the instant interim fees and costs motion in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See Beck* v. *Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.